# IN THE COURT OF APPEALS OF IOWA

No. 24-0211
Filed April 10, 2024

**IN THE INTEREST OF D.W.,**
**Minor Child,**

**K.W., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Sonia M. Elossais of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., Schumacher, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**DANILSON, Senior Judge.**

The juvenile court terminated the parental rights of both parents to D.W. Only the mother appeals. She challenges the statutory grounds authorizing termination, claims termination is not in the child's best interests, and argues the court should apply a permissive exception to forgo termination. The mother also claims she received ineffective assistance from her counsel that should entitle her to relief. Upon our de novo review, we affirm.

## I.    Background Facts[1]

This family most recently came to the attention of the Iowa Department of Health and Human Services back in March 2021 when D.W., then age three, was found alone in the parking lot of the family's apartment building.[2] At first, the family was voluntarily involved with the department. But the department received reports that D.W. continued to be found alone in parking lots over the following months, the mother was using illegal drugs, and she had been charged with multiple counts of theft. This prompted the State to seek formal adjudication of D.W.

In September, the juvenile court adjudicated D.W. as in need of assistance. By the end of the month, the mother began serving a prison term of not more than two years. Prior to the mother's incarceration, she placed D.W. in the physical care of her own parents. The October dispositional order formally removed D.W. from the parents' legal custody.

---

[1] As only the mother appeals the termination of her parental rights, our factual recitation focuses on her conduct rather than on both parents.

[2] In the prior five months, D.W. had been found alone in parking lots three separate times.

While incarcerated, the mother participated in substance-abuse classes and had "almost daily" phone calls and two in-person visits per month with D.W. The mother was released on parole by November 2022. She moved into her parents' home where D.W. also resided. The mother began a trial home placement in March 2023.

However, the mother tested positive for methamphetamine twice via a sweat patch in April.[3] In response, the mother agreed to a safety plan that prohibited the mother from being D.W.'s sole caretaker. The mother once again tested positive in August. As a result, the trial home placement ended, and the mother was asked to leave her parents' home. The mother continued to test positive for methamphetamine throughout the remainder of the year.[4]

The case progressed toward termination, and the juvenile court held a termination hearing in January 2024. At the hearing, the case manager opined that nothing in this case had improved since its inception and that the mother was actually in a worse position than she had been at the start of it. The case manager also revealed that the mother's most recent drug test results came back the prior Friday and the mother had tested positive for methamphetamine and cocaine. Counsel for the mother did not present any evidence.

The court determined the child could not be safely returned to the mother's custody and termination is in the child's best interests, declined to apply an

---

[3] The mother denied using and claimed at least one test was positive because she had sexual intercourse with someone who was using methamphetamine.
[4] The mother also tested positive for cocaine on at least one occasion.

exception to termination, and terminated the mother's parental rights. The mother appeals.

## II.   Standard and Scope of Review

Appellate review of termination-of-parental-rights proceedings is de novo, including claims of ineffective assistance of counsel. *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015). Our paramount concern in termination proceedings is the best interests of the children. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). Typically, our review follows a three-step process that involves determining if a statutory ground for termination is satisfied, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). Then we consider additional claims raised by the parent. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

## III.   Discussion

### A.   Statutory Grounds

With respect to the statutory grounds authorizing termination, the juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(f) (2023). Under this ground, termination is authorized when the child (1) is at least four years old, (2) has been adjudicated as in need of assistance, (3) has been removed from the parent's custody "for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) the child cannot be safely returned to the parent's custody at the time of the termination hearing. Iowa Code § 232.116(1)(f); *see also In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that

"at the present time" means at the time of the termination hearing). The mother only challenges the third and fourth elements.

As to the third element, the mother argues section 232.116(1)(f)(3) requires that the child be removed from her custody for at least twelve of the last eighteen months and there be no trial home period longer than thirty days. As D.W. was subject to a trial home period longer than thirty days, she reasons this element is not satisfied. She misinterprets the statute. The condition that "any trial period at home has been less than thirty days" is only applicable when the child has only been removed for the last twelve consecutive months. *See In re D.M.J.*, 780 N.W.2d 243, 245–46 (Iowa Ct. App. 2010) (analyzing similar phrasing under section 232.116(1)(h), which differs only with respect to the age of child and the length of time the child must be removed from the parent's custody). It does not apply when the child has been removed from the parent's custody for at least twelve of the prior eighteen months. *See id.* As D.W. had been removed from the mother's custody since October 2021 and the termination hearing occurred in January 2024, the State clearly established the third element.

Moving on to the fourth element, the mother argues that she had made some progress so the fourth element was not satisfied. First, we note that a parent's incremental progress is not determinative of whether the child could be safely returned to the parent's custody. Second, like the case manager, we disagree with the mother's assessment of her progress and instead conclude she was no closer to being able to safely parent D.W. at the time of the termination hearing than she was at the beginning of the case. For example, she continues to use illegal substances, testing positive for methamphetamine and cocaine within

days of the termination hearing. Methamphetamine use in itself prevents a parent from being able to safely parent the child. *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children.").

Given the mother's continuous use of methamphetamine, we agree with the juvenile court that D.W. could not be returned to the mother's custody at the time of the termination hearing. The State established a statutory ground authorizing termination.

### B.    Best Interests

Termination also must serve the child's best interests. *See* Iowa Code § 232.116(2). When considering the child's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

The mother has a history of failing to actively parent D.W., repeatedly leaving him alone in vehicles while she shoplifted resulting in him wandering alone in parking lots. Her continued illegal drug use has made it unsafe for D.W. to be around her. D.W. deserves more stability and attention than the mother can provide. He is currently in an adoptive placement with his maternal grandparents, whom he has looked to for the majority of his life to meet his needs. Termination of the mother's rights is a necessary first step for adoption, which would provide much-needed permanency for D.W. We conclude termination is in D.W.'s best interests.

### C.    Permissive Exceptions

Once the State has proven grounds for termination, the burden shifts to the parent to prove a permissive exception under section 232.116(3).  *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).  The mother attempts to invoke two permissible exceptions to termination.  The first, section 232.116(3)(a), is applicable when "a relative has legal custody of the child."  However, this exception is not applicable in this instance because, although the child was placed with the maternal grandparents, the department had legal custody of the child and not the maternal grandparents.  *See A.M.*, 843 N.W.2d at 113; *In re K.B.*, No. 23-0792, 2023 WL 5092856, at *4 (Iowa Ct. App. Aug. 9, 2023).

The second permissive exception the mother contends should preclude termination is section 232.116(3)(c), which is applicable when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  We have no doubt that there is a bond between mother and child.  Our review of the record, however, does not reveal a bond of such magnitude that termination would be detrimental to D.W. and warrant forgoing termination.  *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021).  The mother has been unable to provide the child with a safe environment or overcome her own issues, and the child is at an adoptable age.  We decline to apply this permissive exception to termination.

### D.    Ineffective Assistance

Finally, we address the mother's claim that her counsel provided her with ineffective assistance.  When claiming ineffective assistance, "[t]he parent must show (1) counsel's performance was deficient, and (2) actual prejudice resulted.

Counsel has no obligation to raise a meritless issue." *T.S.*, 868 N.W.2d at 431 (internal citation omitted).

Central to the mother's ineffective-assistance claim is the fact that her counsel did not present any evidence at the termination hearing. She contends, "Because of trial counsel's deficient performance, [the] mother did not have an opportunity for the [juvenile] court to hear the reasons the grounds for termination were not met, or why termination would not have been in the child's best interest." But the mother does not identify what evidence counsel should have presented at the termination hearing that would have contradicted the State's strong evidence that she continues to use methamphetamine and cannot provide the child with safe care. Moreover, the mother failed to attend most of the termination hearing, frustrating her counsel's ability to call her to testify. Following the close of the State's evidence, the juvenile court gave the mother's counsel an opportunity to present evidence. Unfortunately, at that time, the mother was not in attendance to provide any testimony that would shed light on her perspective or explain why she continued to test positive for illegal substances. She did not arrive at the hearing until 9:57 a.m., almost an hour after the termination hearing began.

Given the facts and circumstances of this case, counsel did what she could to cast doubt on the State's case through cross-examination of the State's only witness. Counsel cross-examined the case manager to elicit testimony that the visits between the mother and D.W. go well, that the mother is able to provide her own transportation, and that D.W. is excited to see the mother at visits. In sum, we are unable to surmise what evidence or arguments the mother could raise given the strong evidence supporting termination and the mother's lack of participation.

*See In re K.P.*, No. 98-1530, 1999 WL 1136644, at *3 (Iowa Ct. App. Dec. 13, 1999).

Thus, we conclude her counsel's performance was not ineffective.

## IV.     Conclusion

The State established statutory grounds authorizing termination. Termination is in D.W.'s best interests, and we decline to apply a permissive exception to termination.   This outcome is not the result of any ineffective assistance from the mother's counsel.   Accordingly, we affirm the juvenile court's termination of the mother's parental rights to D.W.

**AFFIRMED.**